All right. Our next case is case number 24-20332, Golden Bear Insurance Company v. 34th S&S, etc. And we'll begin with Dylan Russell v. 34th S&S, et al. May it please the court. Dylan Russell for the appellants. I'd like to address two key issues today. First, the erroneous granting of Golden Bear's, quote, Stowers motion for summary judgment, which was contrary to the Texas Supreme Court's 30-year-old opinion in Garcia and also effectively ended the Stowers doctrine for eroding insurance policies. Second, I'd like to explain why the court should dismiss the case or dismiss the federal declaratory judgment act claims and let the Stowers issues be decided in the still pending state court case. If the court reaches the merits of the Stowers issue and the summary judgment ruling, I would point the court to two Texas Supreme Court cases, two Fifth Circuit cases, and two key pages in the record. The Texas Supreme Court cases, of course, include Garcia as well as N. Ray Danacorp. The two Fifth Circuit cases are, Your Honor, Judge Haynes, your opinion in one beacon and also the September 2024 opinion for Westport Insurance. And then the pages in the record, and I'd like to urge the court to read these two pages to the extent it's getting to the merits of the summary judgment, are pages 456 of the record, which is the key page from our October 2019 Stowers demand, and page 459, which is Golden Bear's response, the substantive page of their response to our Stowers demand. So why do I bring up Garcia? So Garcia in 1994, over 30 years ago, established a rule that a Stowers demand, when complying with the second element that you're making an offer of a full release in exchange for policy limits, that you can say either a sum certain or you can say policy limits. And that's why I referenced one beacon, because this court, although there were a lot of issues not at issue here, in that case the court, and I'm using the court's words, says the letter demanding policy limits is a valid Stowers demand. And, again, that is what Garcia held. Garcia also pointed out another important point that goes to this issue when you have an eroding policy, and this is page 855 of Garcia, and it says that the insured, in this case Concrete Cowboy, that company, that business, they're in the best position to know the identity of any policy or policies that would maximize coverage in the event of a tort claim. So Garcia recognized that if you make a demand for a sum certain and you don't know what the policies are, it's the insured, and presumably at least one of the insurers, if there was only one insurer, as there was here, Golden Bear, they're in the best position to know if there's some other policy or what the amount of any policy limit might be. And then on that same point, the Texas Supreme Court in Ray Danikorp closed the door on the claimant, the tort claimant's right to discover what the policy limits are. So in Ray Danikorp, the Texas Supreme Court reversed a Tyler Court of Appeals opinion that had concluded it was a proper scope of discovery to take a deposition and allow the determination of the amount of eroding policy limits. And the court said unless you can prove that it's relevant to a claim or defense, Texas Rule of Civil Procedure 192.3F limits what you can discover as the claimant, the existence of and the contents of those policies. And it's going to be a very rare case where you're going to be able to establish that the claims or defenses somehow are going to be relevant to how much the defendant's insurance policy might have been eroded through the occurrence of defense costs. So getting to the two pages in the record that I think prove as a matter of law that there was no lack of clarity with respect to what was being demanded when we sent the demand letter, the Stowers demand, October 11th, 2019. So if you look at page 456, it's found elsewhere in the record, but that's actually in the middle of the exhibits that Golden Bear attached to its motion for summary judgment. They make a lot of hay, and this is a very important point. They make a lot of hay about this language of all policy limits of any and all insurance contracts. They say nothing about, I think, a clearer term, use of that, those magic words, policy limits, at the bottom of that same page, 456, where we say, and this is in reference to the deadline to respond and potentially accept the demand, to give you a reasonable time to evaluate and respond to this demand, I will keep open this offer to settle within policy limits. So there's no confusion, there's no lack of clarity that this, what we're offering is to settle for whatever the policy limits are. Oh, but the district court basically said you asked for all policies, any policies, any policy limits. It was a form letter, I'm assuming, that you make these demands all the time, back and forth, in an insurance-type case, but it never specified this insurance policy, never said there was one, never said, identified the claim number or policy number, anything like that. Actually, it did. Page 453 is the first page of that Stowers demand letter, October 11th, and right at the top, above Dear Miss Partons is policy number GBL 10972, which is the very same policy number referenced on the first page of page 459 of the record, which is their October 21, 2019 response, GBL 10972. But it didn't, but the actual demand for policy limits didn't reference that number or that particular policy? I mean, I don't, I guess the question is. No, I'm saying it did. It actually does. But on the re-line, what I'm talking about when you made the actual demand, I mean, the district court basically said there wasn't enough there to make it definite enough, and whether that's the correct ruling or not the correct ruling, I mean, we've got to study that, but I guess my question is sort of, I'm a Mississippi lawyer, not a Texas lawyer, how definite does it have to be, and does the form request that you always send out, does that suffice? So the Texas Supreme Court, again, in 1994 in Garcia said, here's what you say, and for 30 years, that's been the law. You say the magic words, policy limits, and the magic words aren't my words. But of a particular policy? You don't have, there's no case law, and they cite none in any of their trial court or briefing to this court suggesting that you have to say something other than policy limits or that you have to identify a specific policy number, which again, we did. But the key is the Texas Supreme Court says for 30 years now, there's not been a case that has added a nuance or an exception to eroding policies. The standard is policy limits, and the Fort Worth Court of Appeals in 2004 in a case called Westchester versus Admiral, there was, I think their demand initially said a million dollars, but then there was some oral representation that we would accept the policy limits, and there was some expert testimony in that case that said, well, those are, quote, the magic words, policy limits. And I should point out, both sides in their briefing to the district court on summary judgment referenced the exception to the some certain requirement in a lot of the case law talking about Stowers demands, but they said the exception is you make a demand for policy limits, and those two words are doing all the work. The limits is the key word there that does the work to explain to the insured, which again, is in the best position to know, that we're saying whatever is within the remaining limits, that's what we're asking for, no more, no less. But I think not only can we tell that there was one policy. The insurer could have said, well, the policy limits are down because of X, Y, Z, so it's only this amount, and we're willing to give you that, but it's not very much, or whatever. They could say that. Correct. And in fact, that, the purpose, so this court and Westport Insurance did two things, and I'm going to tell you about one of them. The first thing that it did is spell out what Texas' public policy rationale for the Stowers Doctrine is. It includes prompt settlements. That would include pre-suit settlements, and this ruling and the district court below would thwart that public policy. But most importantly is the third rationale, basis, policy for the Stowers Doctrine, and that is to protect the insured. And that is particularly important when you have a small business like Concrete Cowboy that's the insured. They're not going to be solvent like a Fortune 500 company. So this is a life or death situation for that company if their insurer that's accepting those premium payments is playing games with their potential, Concrete Cowboy's potential, to have a business-ending excess judgment. And so what the responsibility of the attorney for Golden, I'm sorry for, yeah, Golden, the insurer was, the responsibility was to explain to us for the benefit of their insured, Concrete Cowboy, there's something not clear about this plan. We don't know what, if they're talking about more than one policy, we don't know what the limits are, so we should reach out. And in fact, our demand asked that they reach out to us if there was some issue. Is there a case that gives the insurance company the obligation to do that, to respond? They don't have an obligation to respond, but what they are doing is risking their insured. They do have a duty to their insured to obviously provide coverage. I understand that, but I'm just saying, you were basically saying if the Stowers demand was unclear, if it was unclear it was an adequate Stowers demand, the insurance company has the responsibility to ask for clarification. Is that in the law, or is that just? There's not case law that says that's the duty, it's the contractual duty between the insurer and the insured. Okay. Because they're playing games with the insured by suggesting, and by the way, the only allegation of noncompliance of Stowers and their response is that we think we're going to win on liability and damages, or we're not convinced that liability and damages is so clear as to the amount with respect to damages. Not to interrupt you, but your time is running low. We're talking about the merits of the district court's declaratory relief here, and there are obviously competing things that would eventually go into a Stowers claim, but as I apprehend your main argument is this shouldn't even be in federal court as a DEC action anyway. Let's talk about that a little bit. We have case law in this circuit that deals with DEC actions for whether there was a Stowers demand or not a Stowers demand. So isn't that an appropriate claim to bring as a DEC action? No, it's not, and I want to clear this issue up. But there is a distinction between is there a Stowers demand and this insurance company is a tortfeasor or is not a tortfeasor. I mean that's not really what the district court was declaring here. Yeah. I mean if you read the two paragraphs in the district court's opinion, it's clear that what it concluded, it used the word because a couple of times, which is telling you that's the basis for its analysis. What it was deciding was because you didn't state a sum certain, it's not clear as a matter of— I'm not talking about the merits. No, I understand. I'm talking about how did we get here because the district court rejected your motion to dismiss the case and said no, this is a proper DEC action in federal court. Right, and the reason I was re-explaining those merits points is it goes to what the court was actually declaring here, which was declaring non-liability for a fully ripened tort claim. So the underlying judgment is April of 2021. They abandoned their appeal of that judgment in December of 2022. The Texas Court of Appeals issued its mandate, and so there was a fully ripe $3.2 million excess judgment. And at that point, there's a ripened Stowers claim, and they used the declaratory— The district court concluded that it was a proper use of the Declaratory Judgment Act to declare non-liability for a fully ripened tort, and that is contrary to this court's opinions in Torch, which states sort of the negative rule, which is you're not supposed to use the Declaratory Judgment Act to declare non-liability for negligence, of which Stowers— That's not what the district court did. The district court went through and assessing your motion to dismiss said, no, we can declare whether there was an adequate Stowers demand. We're not saying who was a tortfeasor, who wasn't a tortfeasor. I mean, your argument sort of rests on this presupposition that there was a Stowers demand made, the insurance company rejected it, therefore they're a tortfeasor under Stowers. That's not correct. Westport Insurance says that as a correct statement of the law, a proper jury instruction included the clarity of the settlement demand. So the jury is deciding that as a matter of fact. We think based upon their response, there in fact was a clear demand, and thus the court was declaring non-liability for a tort. And again— But there wouldn't be liability for a tort if there was never an adequate Stowers demand, correct? Correct. But as a matter of— But that's what the court was declaring. The rest of it is all to be tried. But we submit as a matter of law it was valid because it was clear at the very least Westport's fact question on it. That goes to the merits of what the district court did. That's a separate question we'll have to get to. But I'm going for can this—right now the threshold question of can this be in federal court? Yeah. And I'm hearing you go back to the merits, not the threshold issue of what can the court declare. I can point the court if I may finish the question, Your Honor. Yeah. Okay. Thank you, Your Honor. So Torch and Chevron USA—Chevron USA states the affirmative rule, which is the purpose of the Declaratory Judgment Act is to settle actual controversies before they ripen into a violation of the law. And we know that we have five district court opinions, three from the Northern District, one from the Southern District, Judge Ellison, and one from the Western District, Judge Pittman, all of whom have concluded relying on Torch, relying on Chevron USA, and to the extent necessary, relying on the Trejo factors analysis. All of them have concluded that these are issues that should be decided by the state court case. And I'd be happy to get into the Trejo factors if the court thinks that's appropriate in rebuttal. All right. You have time for rebuttal. Thank you, Your Honor. And so now we'll hear from Sondra Silva for Golden Bear Insurance Company. Thank you, Your Honor. May it please the court, Sondra Silva for Appley Golden Bear Insurance Company. Appellants focused on two issues today during their oral argument, and so I'm going to start in the order that they presented their arguments to this court. First was whether the district court properly granted summary judgment in favor of Golden Bear. We believe it did. To trigger a stower's duty, there has to be a covered claim, the demand must be within policy limits, and it should be one that an ordinarily prudent insurer would accept, considering the likelihood and degree of exposure to a judgment in excess of policy limits. The demand has to offer an unconditional release. The demand has to be for a sum certain, and it has to be clear and unambiguous. The demand here was not clear and unambiguous. Appellants were requesting all policy limits of any and all insurance contracts. The term all is not singular, nor is the term any and all singular. But there's an insurance policy on the reline, and there's only one policy at issue in the case. Well, at the time the demand was made, Golden Bear did not know that there was only one policy at issue in the case. But if we look to the demand letter itself, and I think that's important because the appellants say settlement demand, and below that they say we will settle with you for all policy limits of any and all insurance contracts. They clarify that in the next paragraph by saying this demand is an offer of a full release for all contracts. Here we just have one contract. There was a defect in how it was presented, in how the demand was presented. It was addressed to defense counsel Claire Parsons. It was not addressed to Golden Bear, which is distinct from the One Beacon case where the demand was made to One Beacon itself. Was she counsel of record at the time? She was one of the lawyers that was counsel. Wouldn't that be adequate, though, to basically as agent or counsel for the party? I mean, they're not going to send it directly to the insurance company once they're represented, are they? I think that's a good question, Your Honor. I think it's a good question because why does it matter? They send it to counsel of record. They send it to counsel of record, but the issue is that's not... They didn't just pick her out of the yellow... Well, we don't have yellow pages. They picked her because she was representing Golden Bear. They did, right. And then the demand was sent to Golden Bear to respond. But Garcia doesn't place an obligation on the carrier to bid against itself in accepting a demand. I mean, where... The ultimate question here on the merits, which is how technically particular does Garcia require the demand to be when they say, we want the policy limits? Well, it has to say the policy limits. Well, I mean, I would agree with you that the language is sort of form language. It says all policies, all limits, et cetera. But there's only one policy here, and the policy is referenced on the front page of the letter. But Golden Bear is a primary carrier. Golden Bear doesn't know whether there's an excess policy. Golden Bear doesn't know whether there's been risk transfer. And perhaps Concrete Cowboys is an additional insured on another policy of insurance. When did Golden Bear find all that out? Well, it wouldn't have been at the time the October 2019 demand was made. But did Golden Bear ever revisit the demand once Golden Bear found out that it was the only policy, this was the only one? Golden Bear didn't have an obligation to revisit the demand. Did they ever do it? I'm not asking whether it was an obligation. There were further settlement negotiations in the case, Your Honor, that are not at issue before this court today. I think because appellants can see that those were not proper Stowers demands. Did this case be in federal court at all? It should. You're talking about the merits. Why? Yes, we are. So appellants argue Golden Bear's complaint does not state a valid claim for relief under 12C. But an actual controversy existed. It was ripe for adjudication. The district court had authority to grant the relief sought. And the district court had discretion to hear the case. Don't we have precedent that says the district court was required to consider the Trejo factors? Right. And the district court didn't do that. So why shouldn't we just reverse and send it back on that ground? The district court did consider the Trejo factors, Your Honor. First, the court found that the case was properly before the court. And so we cited Oryx in our response brief to say that that sets a framework for the district court to decide whether or not it can entertain a declaratory judgment action. The court properly considered the Trejo factors. It did it at the time appellants filed their motion. It did it at the time appellants filed their supplemental motion. Each time, when considering these factors, the court found that it could exercise jurisdiction over the case. And it did do so. Failure to do so, in our opinion, would have been an abuse of discretion. Are we being asked to review the district court's application of the Trejo factors? It is an issue that was raised by appellants in their appeal. But it's an abuse of discretion standard, and I don't think appellants can show the district court abuse of discretion. If we look at those factors, was there a pending state court action? There was. Golden Bear filed their action first in federal court. But we agree that that could weigh in favor of a decision just abstained or not hear the case. Was the action filed in anticipation of the lawsuit? In and of itself, it's not improper anticipator litigation or otherwise abusive form shopping. Whether Golden Bear engaged in form shopping? It was filed in the same city where the underlying tort case was pending. Well, it didn't go by city. It goes by court. It does, Your Honor. But Harris County, we were— Clearly what Golden Bear did was run to the courthouse with a deck action after the settlement failed. That's not accurate, Your Honor. It's not? If the insured in this case had filed suit against Golden Bear first in state court, we would have removed on the basis of diversity jurisdiction. The appellants themselves have tried to defeat diversity jurisdiction by adding a legal malpractice claim against defense counsel in the underlying case. That legal malpractice claim is only specific to her failure to recommend to Golden Bear to accept the settlement demand. That's not a viable legal malpractice cause of action. And it's the only issue. It's the only allegations of fact that are alleged in that underlying petition. We would argue that she was an improper party and that the case could have been removed at that point. Well, maybe it could have. Maybe it couldn't have. I mean, if the claim somehow was viable at the time of removal, you'd have been sent back to state court. We might have. But if the trial court had found—the state trial court had found she was an improper party and we'd removed it, it still would have been within the district court's discretion whether or not to hear the case or to not hear the case. An appellant's reliance upon two unpublished decisions from two other district court judges is not binding. It doesn't create a per se rule. Well, but, you know, if the case had been removed from state court, what it would have proceeded as is a tort case. Did Golden Bear breach its dower's duty? But what Golden Bear did was dress this up as a deck action and bring it to federal court and say, can you declare that we're not a tortfeasor? I mean, how is that a proper use of the court's declaratory judgment jurisdiction? Well, I think that goes to your earlier question to appellants, Your Honor. We've laid out the elements for there to be a stower's duty in the first instance, right? We have to have a covered claim. It has to be within policy limits and one that an ordinarily approved insurer would accept. If those preconditions aren't met, Golden Bear never had a stower's duty. So it's a yes and analysis. Are all of those preconditions met? Yes. And then did the insurer breach its duty to settle? Well, so what would have happened, I guess? The court issues declaratory relief that you had a stower's duty. Are we then proceeding in federal court to try a tort claim, like pendant claims, I guess, asserted by the defendants? Or are we dismissing this claim as our final judgment? Here's your declaratory relief, and you all go try the stower's claim. Well, the district court here didn't just rule on the declaratory judgment. In our motion for summary judgment, we addressed the causes of action that Golden Bear had brought, but we also addressed the stower's counterclaim that was already before the court when the motion for summary judgment was filed. So appellants brought the issue of a stower's breach to the federal court themselves. Well, no, I know that, but I guess what I'm saying is counterfactual. The court declares that you had a stower's duty. At that point, I guess you're trying the—I mean, the reason their tort claim failed is because the court said, well, there was no adequate stower's demand here, right? If the court had declared otherwise, then you'd have proceeded, I guess, presumably, to have this tort tried in federal court? We would have proceeded to have the tort tried. That's accurate. I mean, we would have still addressed whether or not it was one that an ordinary prudent insurer would have accepted. I mean, there would have to have been clear liability on the part of the insurer at the time the demand was made. Would have had to still offer an unconditional release. If all of those conditions were met, yes, we would proceed to a tort trial on whether Golden Bear was negligent in accepting the demand. But we never get there because Golden Bear never had a stower's duty in the first place. The appellants also raised an eroding limits policy, and I want to address that in the context of a proper stower's demand. So where the demand is for all policy limits of any and all insurance contracts, it can't be within the Golden Bear policy limits. It can't be within the one million aggregate policy limit that's on the policy. It can't be where Golden Bear paid out settlement in another claim and the limits are compromised, whether or not it's an eroding limits policy or not. Appellants rely on Westport, the Fort Worth Court of Appeals decision, but I think it's important to note that in that case, that demand was for the primary limits. It wasn't for all policy limits of any and all insurance contracts. That demand was followed up with a statement that said, we trust you'll put the excess carrier on notice that this claim can be settled within the limits of the primary policy. We don't have any evidence in the record of a similar circumstance here, nor do we have any evidence in the record that settlement discussions continued and it was implied that plaintiffs would accept whatever amount was remaining on the Golden Bear policy. Because the demand does not comply with Stowers, this court need not even get to the issue of an eroding limits policy. Garcia tells us that it wasn't a proper demand, but even if it does get there, and making an eerie guess, there still couldn't have been a demand. It's not clear that it was for the policy limits. The policy limits is not the same thing as policy limits. The policy limits is not the same thing as all policy limits. So the demand as it was presented, it was either a demand in excess of policy limits, or it was for more than one policy of insurance. At best, it's clear and unambiguous. And under these circumstances, it doesn't meet Stowers. Appellants also raised an issue that they didn't address, which was whether or not, and it kind of goes to your point, Judge Wilson, whether or not the court should rule on an issue that was not ruled on by the district court. And we would submit that this court should not, where there's not an appealable order, that this court not consider that issue. Counsel, you told me earlier that the district court went through the Trejo factors with respect to abstention. Just for my own information, where did the district court do that? Well, the district court considered all of the factors as raised in the appellant's motion as raised. Yeah, but does the district court have a written order going through the factors? There's not a written order. So where can I look in the record, since I'm supposed to be reviewing the district court's application of those factors, where am I supposed to look in the record? Well, when appellants file their motion for reconsideration, if you look to Golden Bear's response to that motion, I mean, it's stating, it states that the district court considered all those factors when it first. Yeah, I'm just asking where did the district court do that? Where can I find that in the record? I don't think you can find it in the record. We don't have a written opinion on that issue, Your Honor. But we would still have to find an abuse of discretion from the district court. Is the sum total of the district court's analysis at pages 7, 8, and the top of 9 in its order on the issue of whether to keep this or whether it's a proper declaratory claim? Well, I think that's separate and apart from the issue on the denying the motion to dismiss. No, this is the motion for judgment on the pleadings. Am I thinking about the wrong thing? I apologize. I may have misunderstood what Judge Duncan's question was. But you're correct, Your Honor, that the totality of the order But it doesn't mention Trejo. It does not mention Trejo because that issue was not before the court at that time. I mean, that issue was whether or not Golden Bear in its petition complaint for declaratory judgment stated a valid claim for relief. The court found that it did. There was a justiciable cause of action. It was right for adjudication for the court to hear. The court did consider that in ruling on it. I'm confused, or maybe confusing the issue, but I am interested in the answer to Judge Duncan's question about where the court engaged with Trejo in terms of keeping the case. Well, that's not addressed in this court's opinion. The court first addressed the motion for judgment on the pleadings. The court denied that motion. The court next turned to Golden Bear's motion for summary judgment on Stowers. The court granted that motion. And then the order next discusses Appellant's motion to dismiss the statutory counterclaims. So while it's true that there's not an analysis of the Trejo factors in that court's order, I mean, the court first found that it was a case properly before the court. It did not grant Appellant's 12C motion for judgment on the pleadings. Once it did that, then the court could have considered the Trejo factors. And it could have decided whether or not to maintain the case or dismiss the case. And here it found in favor of keeping the case in federal court. I mean, that issue had already been ruled upon before we got to the motion for judgment on the pleadings. I appear to have confused everyone, but I'm going to persist. So if the issue of whether the case should be in federal court under the declaratory judgment action, not whether you've stated a claim under the DGA, but whether this is the kind of suit that ought to be entertained or should it be entertained by a state court, because this is obviously a state court issue, I thought our precedent required the consideration of certain factors. And either that issue was raised or it wasn't. So I'll ask counsel on the other side if it was raised. I thought it was. And then, so my question is, where did the district court do that analysis? Since I'm supposed to consider it. So where did it do it? And it seems like what you're saying is that it's not in the record or there's no written record of that. Well, I would clarify that in Golden Bear's response to the motion for summary judgment. It lays out why it is a proper claim before the court. Count one, we're seeking a determination of which coverage part applies, what the limit is, whether or not it's been eroded. That's a proper vehicle for the declaratory judgment act. But we're not asking what the parties contended in SPARTA, but we're asking where did the district court... Yeah, I just want to know what the district court ruled. On the issue that I've been talking about? In my opinion, the court ruled on it when it denied appellant's motion for judgment on the pleadings. The district court ruled on it when it denied the motion to dismiss twice. So it's implied. Implicit. Well, when appellants filed their motion to dismiss for judgment on the pleadings, it was only on the basis of whether or not Golden Bear's complaint stated a valid claim for relief. Okay, I think we're running in circles. We'll look at the record, obviously. But thank you for trying to clarify. Okay, I apologize if I misunderstood or confused the issue. Appellants could have filed a 12B6 motion early on too. They didn't do that. It would be the same burden of proof here for the 12C judgment motion on the pleadings. The 12C motion for judgment on the pleadings, that was filed after the close of discovery in the district court case. That was filed after the deadline to file a summary judgment. That was filed after the deadline to file any, that motion itself, it was filed after the deadline to designate and serve expert reports, which were missed by appellants. And so then they filed this motion because they would have rather had their claim heard in state court. That in and of itself is improper. And the district court did have jurisdiction over the case. For all of these reasons, Golden Bear respectfully asks that the court affirm the district court's ruling in all respects. Okay. Thank you for your argument. We'll now hear the rebuttal. Do you want to address what the district court addressed? Beyond just the ruling? Was that an issue raised in this case? It was raised by motions and the court signed two orders denying our motion to dismiss or alternatively to stay. That was page 168 in the record as the court's first order and it's just a form, speaking of forms, it's just a form order denying the motion. There's no analysis of TRAO factors. We moved for reconsideration, developed the record a little bit more about what was happening down in the state court case and on reconsideration the judge, the district court, denied the motion to reconsider the dismissal motion under the TRAO factors and that's pages 201 to 20... I'm sorry, that's the motion itself. 266 to 267 is the order denying the motion to reconsider. So basically we have three pages of orders. Is it fair to say that to the extent this issue with respect to the TRAO factors was raised the district court's ruling on that doesn't explicitly address the factors but just implicitly denies the motion? Well, denies without any analysis in writing of what the TRAO factors analysis was. I guess I meant to say implicitly analyzes the factors but doesn't tell us why. Sometimes district courts do that. It makes our life difficult. Yes, and if you look at the court's order, the final judgment it spells out in the beginning what is actually being addressed and it's the motion for summary judgment, the motion for partial summary judgment, the motion for judgment on the pleadings and then the motion to dismiss the counterclaims. So if this court can, without the benefit of the district court's analysis of how it applied and weighed the TRAO factors, this court can analyze that at least on the record here's what I think the court can do to reach the conclusion that we would suggest and would certainly be easier than delving into the nitty-gritty details of Texas Stowers' jurisprudence and that is comparing this case to the Sherwin-Williams case which they cite repeatedly in their briefing to this court as two examples on the far ends of the extreme. So TRAO I'm sorry, the far ends of the spectrum So if you look at Sherwin-Williams, it was a federal declaratory judgment active request, there were several of them dealing with paint issues and the declaratory judgment there had two federal questions, which is one a First Amendment the other one was a federal preemption question, so we don't have that here all we have are state law claims so just to be clear, the still pending since June of 2023 state law case are all of these same issues with the exception, and all the same parties with the exception of the legal malpractice claims that are only pending in the state court case brought by Mr. Warrick who is one of the owners and employees of Concrete Cowboy So in Sherwin-Williams there was no state court case pending one of them that existed had been removed to federal court here again for just shy of a month less the state court case is still pending So for example there's going to be piecemeal litigation here which was something the Sherwin-Williams case was trying to avoid because there was anticipated future state court litigation and by addressing probably most likely the most meritorious ground was the preemption, it would have prevented this ruling if the district court decided regarding preemption, it would have prevented all this additional anticipated state court litigation here even if this court were to affirm, we hope it doesn't but if it did, there's still going to be pending litigation between two of the appellants on the legal malpractice claim and I would submit a lot of that malpractice argument is based upon Stowers but there are probably going to be other issues and my other clients, Mr. Clements and Mr. Capel will likely be, at a minimum, fact witnesses in that case if not brought in as responsible third parties or third parties in some way but as to the forum shopping issue, Judge Wilson you brought up the point that I don't know how you can disagree with that bringing the Federal Declaratory Judgment Act claim five months after the fully ripened date of the Court of Appeals mandate and then doing it the very day after a failed mediation here are two additional forum shopping concerns that I think the Court should consider that was evident that was brought to light, I should say, with respect to their third count their third count in the district court below was for attorney's fees under the Texas Uniform Declaratory Judgment Act and Chapter 38, which I'm out of time we'd ask the Court to reverse and dismiss unless there's any questions Thank you both sides, we appreciate your arguments the case is now under submission